ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

(USAO GAN 6/10)  Search Warrant

JUL 1 8 2019

# United States District Court

### NORTHERN DISTRICT OF GEORGIA

JAMES N. HATTEN, Cler

By: ____

In the Matter of the Search of

**APPLICATION AND
AFFIDAVIT FOR
SEARCH WARRANT**
Case number: 4:19-MC-44
**UNDER SEAL**

The SUBJECT PREMISES: 19 Corinth Road Cartersville,
Georgia 30121, as further described in **Attachment A**

I, Shawn M. Owens, being duly sworn depose and say:

I am a Special Agent of the HHS-OIG and have reason to believe that on the property described as:

The SUBJECT PREMISES: 19 Corinth Road Cartersville, Georgia 30121, as further described in
**Attachment A**

in the Northern District of Georgia there is now concealed certain property, certain information, and
certain data, namely,

**See Attachment B**,

which constitutes evidence of a crime, contraband, fruits of crime, or items illegally possessed, and
property designed for use, intended for use, or used in committing a crime, concerning violations of Title
18, United States Code, Section(s) 2252 (a)(2) and (a)(4)(B). The facts to support a finding of Probable
Cause are as follows:

**SEE ATTACHED AFFIDAVIT**

Continued on attached sheet made a part hereof.

Sworn to before me, and subscribed in my
presence

_____
Signature of Affiant

Shawn M. Owens

July 18, 2019
_____
Date

Rome , Georgia
_____
City and States

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE
_____
Name and Title of Judicial Officer
AUSA Katherine I. Terry

_____
Signature of Judicial Officer

**AFFIDAVIT**

I, Shawn M. Owens, Special Agent with Homeland Security Investigations (HSI), being duly sworn under oath, hereby state that the following is true and correct to the best of my knowledge and belief:

**INTRODUCTION**

1.      I have been a Special Agent with the Department of Homeland Security (DHS) Homeland Security Investigations (HSI) for approximately nine years.  Prior to serving as a Special Agent, I served as an Immigration Enforcement Agent with DHS, Immigration and Customs Enforcement, Enforcement and Removal Operations and as a Border Patrol Agent with DHS-United States Customs and Border Protection, Office of Border Patrol.  Over the past twelve years, I have led, conducted and/or participated in criminal investigations of matters and offenses such as child exploitation, identity theft, immigration violations, narcotics trafficking, human trafficking and human smuggling.

2.      As a Special Agent, I am responsible for enforcing federal criminal statutes, including statutes criminalizing the sexual exploitation of children pursuant to Title 18, United States Code, Sections 2252 and 2252A. I received training and have experience relating to federal criminal procedures, federal statutes, and DHS regulations.  I have received training and instruction in the investigation of child pornography offenses and have had the opportunity to participate in investigations relating to the sexual exploitation of children.  As part of my training and experience, I have reviewed images containing child pornography in a variety of formats (such as digital still images and video images) and media (such as digital images, videotapes, video file and printed images).

3.      This affidavit is submitted in support of an application for a search warrant for the property, to include all structures, out-buildings, vehicles and recreational vehicles, located at **19 Corinth Road Cartersville, Georgia 30121** (the SUBJECT PREMISES), for computer(s) and other related devices and media located therein, for evidence of violations of Title 18, United States Code, Sections 2252(a)(2) and 2252(a)(4)(B) that prohibit the receipt, distribution and possession of visual depictions of minors engaged in sexually explicit conduct. The SUBJECT PREMISES is more fully described in Attachment A.

4.      Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252(a) and 2252A(a) are presently located at the SUBJECT PREMISES. The information contained herein is based on my own investigation, my training and experience, as well as information provided to me by other law enforcement officers.

**BACKGROUND REGARDING SEIZURE OF COMPUTERS**

5.      This affidavit is made in support of authorization to search and seize records, computers, and electronic storage media that might be found at the SUBJECT PREMISES. Some of these electronic records might take the form of files, documents, and other data that is user-generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

6.      For example, based on my knowledge, training, and experience, I know that a powered-on computer maintains volatile data. Volatile data can be defined as active information temporarily reflecting a computer's current state including registers, caches, physical and virtual

memory, network connections, network shares, running processes, disks, tape and/or CD-ROM and printing activity. Collected volatile data may contain such information as opened files, connections to other computers, passwords used for encryption, the presence of anti-forensic tools, or the presence of programs loaded in memory that would otherwise go unnoticed. Volatile data, and its corresponding evidentiary value, is lost when a computer is powered-off and unplugged.

7.     Based on my training and experience, I know that, wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information. Data on the storage medium not currently associated with any file can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates that files were created and the sequence in which they were created.

8.      Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.   Electronic files downloaded to a storage medium can be stored for years at little or no cost.   Even when files have been deleted, they can be recovered months or years later using forensic tools.   This is so because when a person deletes a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

9.      As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes how the computers were used, the purpose of their use, who used them, and when they were used.

10.      In cases like this one, where the evidence consists partly of graphic files, the monitor and printer are also essential to show the nature and quality of the graphic images that the system can produce.   In addition, the analyst needs all assisting software (operating systems or interfaces, and hardware drivers) and any application software, which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instructional manuals or other documentation and security devices.   Moreover, searching computerized information for evidence or instrumentalities of crime commonly requires the seizure of the entire computer's input/output periphery devices (including related documentation,

passwords and security devices) so that a qualified expert can accurately retrieve the system's data in a controlled environment.

11.     In cases of this sort, the computer and its storage devices, the mouse, the monitor, keyboard, printer, modem and other system components are also used to operate the computer to commit offenses involving the sexual exploitation of minors.  Devices such as modems can contain information about dates, frequency, and computer(s) used to access the internet.  The monitor, keyboard, and mouse may also have fingerprints on them indicating the user of the computer and its components.

12.     Similarly, files related to the sexual exploitation of children found on computers and other digital communications devices are usually obtained from the Internet or the cellular data networks using application software which often leaves files, logs or file remnants showing the identity of the person engaging in the conduct as well as the method of location or creation of the images, search terms used, and exchange, transfer, distribution, possession or origin of the files.  Files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."  The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

13.     "User attribution" evidence can also be found on a computer and is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat,"  instant messaging logs, photographs, and correspondence (and the data associated with the foregoing, such as file creation and last accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.  I know from training and

experience that persons trading, receiving, transporting, distributing or possessing images involving the sexual exploitation of children or those interested in the firsthand sexual exploitation of children often communicate with others through correspondence or other documents which could tend to identify the origin and possessor of the images as well as provide evidence of a person's interest in child pornography or child sexual exploitation.

14.      I know from my training and experience that digital software or hardware exists that allows persons to share digital access over wired or wireless networks allowing multiple persons to appear on the Internet from the same Internet Protocol ("IP") address.  Examination of these items can reveal information about the authorized or unauthorized use of Internet connection at the residence.

15.      Searching computers for the evidence described in the attachment may require a range of data analysis techniques.  For example, information regarding user attribution or Internet use is located in various operating system log files that are not easily located or reviewed.  Or, a person engaged in criminal activity will attempt to conceal evidence of the activity by "hiding" files or giving them deceptive names.  As explained above, because the warrant calls for records of how a computer has been used, what it has been used for, and who has used it, it is exceedingly likely that it will be necessary to thoroughly search storage media to obtain evidence, including evidence that is not neatly organized into files or documents.  Just as a search of the premises for physical objects requires searching the entire premises for those objects that are described by a warrant, a search of these premises for the things described in this warrant will likely require a search among the data stored in storage media for the things (including electronic data) called for by this warrant.  Additionally, it is possible that files have been deleted or edited, but that

remnants of older versions are in unallocated space or slack space. This, too, makes it exceedingly likely that in this case it will be necessary to use techniques that are more thorough.

16.     Based upon my knowledge, training and experience, I know that a thorough search for information stored in storage media often requires agents to seize most or all storage media to be searched later in a controlled environment. This is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. Additionally, to properly examine the storage media, it is often necessary that some computer equipment, peripherals, instructions, and software be seized and examined in the controlled environment. This is true because of the following:

- The nature of evidence: As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. Also, because computer evidence is extremely vulnerable to tampering and destruction (both from external sources and from code embedded in the system as a "booby-trap"), the controlled environment of a laboratory is essential to its complete and accurate analysis.

- The volume of evidence: Storage media can store the equivalent of millions of pages of information. Additionally, a suspect may try to conceal criminal evidence by storing it in random order with deceptive file names. This may require searching authorities to peruse all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or

months, depending on the volume of data stored, and it would be impractical and invasive to attempt this kind of data search on-site.

- Technical requirements:  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on-site.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

- Variety of forms of electronic media:  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

## BACKGROUND REGARDING THE INTERNET AND CHILD EXPLOITATION

17.    I have been trained in the investigation of crimes involving the sexual exploitation of children.  Based on this training and knowledge, and the experience of other law enforcement personnel involved in this investigation, I know the information in the following paragraphs.

18.    Child pornographers can transfer photographs from a camera onto a computer-readable format with a device known as a scanner.  With the advent of digital cameras, the images can now be transferred directly onto a computer.  A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made with literally millions of computers around the world.  The ability to produce child

pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography. Child pornography can be transferred via electronic mail or through file transfer protocols to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornography.

19.    The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single compact disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of one terabyte or more are not uncommon. These drives can store thousands of images and videos at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with video capture capabilities, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

20.    With Internet access, a computer user can download an image file from the Internet or from another user's computer to his own computer, so that the image file is stored in his computer. The user can then display the image file on his computer screen, and can choose to save the image on his computer and/or print out a hard copy of the image. Sometimes the only

method to recreate the evidence trail of this behavior is with careful laboratory examination of the computer, modem, printer, and other electronic devices.

21.    I know from my training and experience that search warrants of residences involved in computer or digitally related criminal activity usually produce items that tend to establish ownership or use of digital devices and ownership or use of any Internet service accounts accessed to obtain child pornography, to include credit card bills, telephone bills, correspondence and other identification documents.

22.    Importantly, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. As noted above, even when such files have been deleted, they may be recoverable months or years later using readily available forensic tools. When a person deletes a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a user's operating system, storage capacity, and computer habits.

## PEER TO PEER (P2P) FILE SHARING

23.     Peer to Peer (P2P) file sharing allows people using P2P software to download and share files with other P2P users using the same or compatible P2P software. P2P software is readily available on the Internet and often free to download.  Internet connected devices such as computers, tablets and smartphones running P2P software form a P2P network that allow users on the network to share digital files.

24.     BitTorrent is one of many P2P networks. For a user to become part of the BitTorrent network, the user must first obtain BitTorrent software and install it on a device. When the BitTorrent software is running and the device is connected to the Internet, the user will be able to download files from other users on the network and share files from their device with other BitTorrent users.

25.     For a user to become part of the Shareaza and/or BitTorrent network, the user must first obtain Sharezaz/BitTorrent software and install it on a device. When the BitTorrent software is running and the device is connected to the Internet, the user will be able to download files from other users on the network and share files from their device with other Sharezaz/BitTorrent users.

26.     Users of the BitTorrent network wishing to share new content will use a BitTorrent program to create a "torrent" file for the file or group of files they wish to share. A torrent file is a small file that contains information about the file(s) and provides a method for a user to download the file(s) referenced in the torrent from other BitTorrent users. Torrent files are typically found as the result of keyword searches on Internet sites that host or link to them. Torrent files may be referenced by their infohash, which uniquely identifies the torrent based on the file(s) associated with the torrent file.

27.   To download file(s) from other users on the BitTorrent network, a user typically obtains a torrent file. The Sharezaz/BitTorrent software processes the information in the torrent file and locates devices on the BitTorrent network sharing all or parts or the actual file(s) being sought. The download of the content referenced in the torrent is achieved after the requesting computer and the sharing computer(s) directly connect to each other through the Internet using the BitTorrent software.

28.   A torrent file can contain multiple files that are individually viewable/accessible within a single torrent file.  A torrent file can be thought of as being similar to a zip file or a folder within Windows, in that downloading or opening a single torrent file can provide access to multiple individual files.

## BACKGROUND OF INVESTIGATION

*Overview*

29.   I received an investigative lead from the Bartow County, Georgia Sheriff's Office related to a Peer-to-Peer user at IP address 24.99.115.125.  This IP address is suspected of advertising for download multiple files of suspected child pornography.  Using an open source database, it was been determined that this IP address resolved to the area Cartersville, GA and was operated by Comcast Cable Communications (Comcast).  Comcast reported that this IP address was assigned to Bryan Somers at 19 Corinth Road Cartersville, GA 30121 (the SUBJECT PREMISES).  A review of law enforcement databases and surveillance corroborate that Bryan Somers and Jennifer Somers live at the SUBJECT PREMISES.

*Download of Suspected Child Pornography*

30.   On June 25, 2019, Det. Brady of the Polk County, Georgia Police Department was conducting an online investigation on the BitTorrent network for offenders sharing child

pornography. An investigation was initiated for a device at IP address 24.99.115.125 because it

was associated with a torrent with the infohash: bf5576ed970ce9143de7d44ea3d1f251de5340e5.

This torrent file references 317 files, including at least one file of suspected child pornography,

with file names such as:

- 9yo webcam 2013 new.mpg

- A Cute Baby Love Hole.avi

- Asian Woman Sucks and Fingers 6yo Boy.avi

- 2sis_8yo_10yo omegle.mpg

31.     Using a computer running investigative BitTorrent software, a direct connection

was made to the device at IP address 24.99.115.125. The suspect device reported it was using

BitTorrent client software -UT355W- μTorrent 3.5.5.  On June 25, 2019, between 7:21 a.m. and

7:24 a.m. (-4:00 UTC), law enforcement downloaded the following 11 file(s) made available by

the device at IP address 24.99.115.125:

- v_1.0
- 10yo on vine horny crazy squirt.jpg
- 10yo on vine horny crazy squirt.mp4
- vine_0.jpg
- vine_1.jpg
- vine_1.mp4
- vine_2.jpg
- vine_2.mp4
- girl ptsc webcam.flv
- bestiality dog girl oral pthc webcam.avi
- bestiality dog girl oral pthc webcam_preview.png

32.     The device at IP Address 24.99.115.125 was the sole candidate for each download, and as such, each file was downloaded directly from this IP Address. (The associated infohash for each file is located in the report submitted by Det. Brady.)

*Description of Files Downloaded*

33.     On July 03, 2019, I reviewed the image file "vine_0.jpg". This video depicted a pubescent female child in a collage of photographs. The individual tiles of the collage showed the female child holding and playing with a purple vibrator. In multiple tiles the child is simulating oral sex with the vibrator and in one tile the child is inserting the vibrator in her vagina.

34.     On July 17, 2019, I reviewed the image file "Bestiality dog girl oral pthc webcam.avi." This file is a video file of approximately 14 minutes and 27 seconds. The video depicts a pre-pubescent female child in a black and white dress. The child is in a bedroom setting with stuffed animals on the bed. The child exposes her vagina and digitally penetrates her vagina. The child then turns the camera to a large dog on the bed. The child manually masturbates the dog, performs oral sex on the dog and then places herself under the dog so that she can rub the dog's penis on her vagina and back-side.

35.     On July 17, 2019, I reviewed the image file "Girl ptsc webcam.flv." This file is a video file of approximately 1 minute and 37 seconds. The video depicts a pre-pubescent female child in a flowered dress on a webcam. The child exposes her breasts and then stands up to expose her bare vagina and anus. The child moves around as she talks to the camera and digitally penetrates her vagina.

*Information regarding the SUBJECT PREMISES*

36.     On July 03, 2019, I submitted a subpoena to Comcast for IP address 24.99.115.125 for the time period of June 25, 2019 between the hours of 7:21 a.m. and 7:24 a.m. (-4:00 UTC)

[11:21 a.m. to 11:24 a.m. eastern daylight savings time].  On July 15, 2019, I received a reply

from the Comcast Legal response Center.  Comcast stated that within the time period specified

in the subpoena, the target IP address was registered to the following:

> **Subscriber Name:** Bryan Somers
> **Service Address:** 19 Corinth Road Cartersville, GA 30121
> **Telephone #:** (770)-401-9132
> **Type of Service:** High Speed Internet Service
> **Account Number:** 8220210510437405
> **Start of Service:** Unknown
> **Account Status:** Active
> **IP Assignment:** Dynamically Assigned
> **Email User IDs:** bull593@comcast.net

37.     On July 16, 2019, I conducted open source and law enforcement database checks

related to 19 Corinth Road, Cartersville, GA 30121 (the SUBJECT PREMISES).  These checks

revealed that the occupants of SUBJECT PREMISES are listed as Bryan David Somers and

Jennifer Mae Somers.  Further, a 1998 Jeep Grand Cherokee Laredo is registered to Bryan

SOMERS at the SUBJECT PREMISES and a 2008 Ford F-150 is registered to Jennifer Somers

at the SUBJECT PREMISES.  Bryan Somers holds a current Georgia Driver's License that lists

his home address as the SUBJECT PREMISES.  Jennifer Somers holds a current Georgia

Driver's License that lists her home address as the SUBJECT PREMISES.

38.     On July 16, 2019, at approximately 9:45 a.m., I conducted surveillance at the

SUBJECT PREMISES.  I noted the two vehicles described in the paragraph above were parked

in front of the SUBJECT PREMISES: a dark colored, older model Jeep Grand Cherokee (Jeep)

bearing GA license plate EU1470 (registered to Bryan Somers) and a dark colored Ford F-150

bearing GA license plate XCF143 (registered to Jennifer Somers).

39.     During the surveillance, I saw that the Jeep had a Georgia specialty license plate

that indicated the driver of the vehicle was a medical provider.  A search of law enforcement

databases showed that Bryan SOMERS receives wages from the Bartow County, GA School System and from the Metro Atlanta Ambulance Service (MAAS). (MAAS is the company that provides emergency medical ambulance services to the citizens of Bartow County, GA.)

40.    On July 16, 2019, Bartow County Sheriff's Office (BCSO) Investigator (Inv.) LaFrance made contact personnel assigned to the Bartow County School System. Inv. LaFrance confirmed that Bryan SOMERS was employed with the school system as a substitute teacher. That same day, I made contact with the Human Resources Department for MAAS. MAAS confirmed that SOMERS is employed with their agency, and that SOMERS is assigned to an ambulance dispatched from Station 1 in Cartersville, GA. MAAS further confirmed that SOMERS was not on the schedule as having worked a shift on June 25, 2019. Thus, he was not at work with MAAS on the day of the June 25, 2019 download of the 11 file(s) from the device at IP address 24.99.115.125.

### INDIVIDUALS WHO HAVE A SEXUAL INTEREST IN CHILDREN AND RECEIVE AND/OR DISTRIBUTE CHILD PORNOGRAPHY

41.    Based on my previous training and participation in child pornography and related investigations, I have learned that individuals who possess, receive, distribute or access with intent to view child pornography have a sexual interest in children and in images of children, and downloading images and videos of child pornography. Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

- The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

- The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, videotapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children. Individuals who collect child pornography often store it on multiple devices to be collected, viewed or traded at a later date. For example, devices such as a thumb drive and/or portable hard drive are used to transfer a downloaded image from one device (e.g., computer) to another device (e.g., tablet).

- The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect their collections of illicit materials from discovery, theft, and damage. They almost always maintain their collections in the privacy and security of their homes or another secure location.

- The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact helps these individuals to rationalize

and validate their deviant sexual interest and associated behavior.  The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, email, email groups, bulletin boards, Internet relay chat, newsgroups, instant messaging, and other similar vehicles.

- The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children, as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires.  Such individuals rarely destroy these materials because of the psychological support they provide.

- The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests.  These contacts are maintained as a means of personal referral, exchange or commercial profit.  These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

## CONCLUSION

42.    Based on the investigation described above, there is probable cause to believe that at the SUBJECT PREMISES—the property located at 19 Corinth Road Cartersville, GA 30121, described in greater detail in Attachment A—will be found evidence, fruits, and instrumentalities of a violation or violations of Title 18, United States Code, Section 2252(a)(2) and 2252(a)(4)(B)

(the distribution, receipt and possession of visual depictions of minors engaged in sexually explicit conduct), described in greater detail in Attachment B.  I, therefore, respectfully request that the attached warrant be issued authorizing the seizure and search of the items listed in Attachment B.

**END OF AFFIDAVIT**

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

The SUBJECT PREMISES is located at 19 Corinth Road Cartersville, GA 30121.  This

Residence is an attached Townhouse that is located on Corinth Road in a shared parking lot with

several other units.  The parking lot is located in the right-hand side of the road prior to reaching

the Corinth Baptist Church.  The Subject Premises is a townhouse with red brick around bottom

level and off-white siding covering the remainder of the building.  There is a small overhang over

the front door and a white garage door.  The molding around the single garage door bears a small

"19".



## ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

The following items, located at 19 Corinth Road Cartersville, GA 30121, to include any and all structures, outbuildings, vehicles and recreational vehicles, that constitute contraband or evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Section 2252:

1.  Images or visual depictions of minors engaged in sexually explicit conduct.

2.  Records and information containing child erotica, including texts, images and visual depictions of child erotica.

3.  Any and all information, notes, software, documents, records, or correspondence, in any format and medium pertaining to violations of Title 18, United States Code, Section 2252.

4.  Any and all information, notes, documents, records, or correspondence, in any format or medium concerning communications about child pornography or sexual activity with or sexual interest in children.

5.  Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by use of the computer or by other means for the purpose of committing violations of Title 18, United States Code, Section 2252.

6.  Any and all information, notes, documents, records, or correspondence, in any format or medium concerning membership in online groups, clubs, or services that provide or make accessible child pornography.

7.  Any and all cameras, film, videotapes or other photographic equipment that constitute contraband or evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Section 2252.

8.  Any and all information, records, documents, invoices and materials, in any format or medium that concern any accounts with an Internet Service Provider.

9.  Any and all information, records, documents, invoices and materials, in any format or medium that concern email accounts, online storage, or other remote computer storage.

10. Any and all information, documents, records, or correspondence, in any format or medium pertaining to occupancy or ownership of the premises and use or ownership of computer equipment found in the premises.

11. Credit cards, credit card information, including, but not limited to, bills and payment records pertaining to violations of Title 18, United States Code, Section 2252.

12. Computer(s), computer hardware, computer software, computer related documentation, computer passwords and data security devices, digital storage media, flash drives, external hard drives, compact discs, digital video discs, any physical object upon which computer data can be recorded, gaming devices, digital communications devices, tablets, cellular telephones, cameras, videotapes, video recording devices, video recording players, video display monitors, digital input and output devices such as keyboards, mice, scanners, printers, monitors, electronic media and network equipment, modems, routers, and external or connected devices used for accessing computer storage media that was used to commit violations or facilitate commissions of violations of Title 18, United States Code, Section 2252.

13. For any computer, computer hard drive, or other physical object upon which computer data can be recorded (hereinafter, COMPUTER) that is called for by this warrant, or that might contain items otherwise called for by this warrant:

   a. evidence of who used, owned, or controlled the COMPUTER at the time the items described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, user profiles, e-mail, e-mail contacts, "chat" or instant messaging logs, photographs, and correspondence;

   b. evidence of software that may allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

   e. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

   f. evidence of the times the COMPUTER was used;

   g. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

   h. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

   i. contextual information necessary to understand the evidence described in this attachment; and

j.   volatile data necessary to preserve evidence prior to powering-off and unplugging a running computer.

14. If evidence located on a computer appears to relate to criminal acts other than violations of Title 18, United States Code, Section 2252, those items will not be further examined unless and until a search warrant is applied for and issued for evidence of any such separate criminal act.

15. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

16. Any and all material that is evidence of the sexual interest in children to include, but not limited to, children's undergarments, sexual devices pertaining to children and other material related to children that is sexual in nature or used for sexual fantasies.